UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Allison B. Young, | ) | Civil Action  No. 5:15-4153-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and

Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff

brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision

of the Commissioner of Social Security ("Commissioner") denying her claim for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social

Security Act ("the Act"). The issues before the court are whether the decision is supported by

substantial evidence, and whether the Commissioner's decision contains an error of law. For the

reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

        A.  Procedural History

        In February 2012, Plaintiff applied for DIB and SSI alleging a disability onset date of

December 31, 2006.[1] Tr. 198-203. Her applications were denied initially, Tr. 88-89, and upon

reconsideration, Tr. 124-25. Plaintiff requested a hearing by an Administrative Law Judge

("ALJ"), Tr. 148-49, and Plaintiff appeared with her counsel at a hearing on February 3, 2014,

---

[1] Plaintiff's initial application for DIB alleged a disability onset date of February 8, 2008, Tr.
198, however the application was later amended to allege an onset date of December 31, 2006,
Tr. 200.

Tr. 29-57. At the administrative hearing Plaintiff amended her alleged onset date to February 21, 2011. Tr. 32. The ALJ issued a decision on April 18, 2014, finding Plaintiff was not disabled. Tr. 9-22. Plaintiff sought review by the Appeals Council. Tr. 7. On August 20, 2015, the Appeals Council denied the request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-3. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on October 7, 2015. ECF No. 1.

### B. Plaintiff's Background

Plaintiff was born in November of 1958, and was 48 years old as of her alleged onset date of December 31, 2006, Tr. 226, and 52 years old as of her amended alleged onset date of February 21, 2011, Tr. 32. In her Disability Report-Adult, Plaintiff indicated that she completed the 12th grade in 1977 and completed specialized job training in data entry in 1986. Tr. 256. Plaintiff's past relevant work ("PRW") was as a customer service representative for various companies including AAA of New Jersey, Pomerantz Staffing Service, MCI Corporation, and Bed Bath and Beyond. *Id.* Plaintiff also worked as a cashier for Wal-Mart from June 2007 until March 2008. *Id.* Plaintiff indicated that she stopped working on March 7, 2008, because of her conditions and because she "was having problems at work site." Tr. 255. Plaintiff noted that although she stopped working for other reasons she believed her conditions became severe enough to keep her from working on December 31, 2006. *Id.* Plaintiff listed the following medical conditions: "Degenerative Disc Disease[,] Depression[,] Arthritis in right knee (knee gives out)[,] hip (due to knee giving out and falling)[,] right foot (due to knee giving out broke bone in foot)[, and] high blood pressure (uncontrolled)." *Id.*

C.  The Administrative Hearing

1.  Plaintiff's Testimony

Plaintiff and her counsel appeared at her administrative hearing on February 3, 2014, along with Vocational Expert ("VE") Rebecca L. Bruce. Tr. 29. Plaintiff's counsel informed the ALJ that Plaintiff was amending her alleged onset date to February 21, 2011, because "[t]hat was when she started having more significant problems with her . . . right lower extremity." Tr. 32. In response to questions from the ALJ, Plaintiff testified that she was born in November 1958, was not married and had grown children. Tr. 33. Plaintiff stated that since moving to Camden, South Carolina in 2007 she has lived in a house with a couple. *Id.* Plaintiff confirmed that except for five months in 2007-08 working as a cashier at Wal-Mart, all of her prior work was in New Jersey. Tr. 34. Plaintiff testified that she did not graduate from high school, and although she went for her GED she did not take it. *Id.* Plaintiff testified that she completed the twelfth grade but did not graduate. Tr. 35. Plaintiff stated that she moved to Camden after her mother died. *Id.* Plaintiff stated that she has no income, she receives food stamps, and the couple with whom she lives provides all the shelter and utilities. Tr. 36. Plaintiff testified that most of her jobs were customer service work and involved talking on the telephone. Tr. 36-38. Plaintiff stated that she left her last job at Bed, Bath & Beyond in 2006 to care for her sick mother. Tr. 38. Plaintiff testified that she left the job at Wal-Mart in 2008 because the work as a cashier "took a toll on [her] body." Tr. 38-39. Plaintiff stated that in the last couple of years she has developed problems with her knees, hand, back, and hips. Tr. 39. Plaintiff testified that she has been told she has degenerative disc disease in her back and arthritis or "water" in her right knee. Tr. 40. Plaintiff testified that she has depression for which she is taking medication. *Id.* Plaintiff stated that she started the depression medication in 2012 when she had her first treatment. Tr. 41. Plaintiff confirmed that she takes two medications for depression, two for sleep, and Norvasc for

blood pressure. *Id.* Plaintiff confirmed that she has had some falls because of her knees, she is anxious in social settings, she uses a cane although it was not prescribed for her, she wears a knee brace, and has been through some physical therapy for her knee. Tr. 41-42. Plaintiff also confirmed that "about a year ago" she had some issues with cocaine, but "nothing" was going on with that. Tr. 42. The ALJ asked Plaintiff regarding a notation of poor compliance with treatment and asked if she was taking her medicines. Tr. 43. Plaintiff testified that she was taking it when she could afford to get it. *Id.* Plaintiff stated that she takes over-the-counter medicine, ibuprofen, for pain. Tr. 44. Plaintiff testified that her biggest physical problem is her knee and her wrists, but she also has pain in her left hip. *Id.* Plaintiff stated that she changed primary care providers in May 2012 because the Kershaw County clinic told her that they could no longer help her and referred her to Sandhills. *Id.* Plaintiff testified that she was not given a reason for them switching her from a free clinic to someplace she has to pay for services. Tr. 46. Plaintiff stated that the doctors at Sandhills continue to see her although payment is an issue. Tr. 47. Plaintiff stated that they bill her for services and she pays whatever she can toward the bill. *Id.* Plaintiff testified that her family members help her with paying for her medication. Tr. 47-48.

In response to questions from her counsel Plaintiff confirmed that the doctor told her she has arthritis in her hands. Tr. 48. Plaintiff testified that she is unable to lift anything, and although she can write some, "when it really hurts [she] just can't, [she] can't write at all." *Id.* Plaintiff testified that "it really hurts, at least, twice a month." Tr. 49. Plaintiff testified that because she is constantly using her hands to hold onto things because of her knees, "they just throb." *Id.* Plaintiff testified that she can use her hands for simple tasks for "a good 20 minutes, maybe" before she has to stop what she is doing. *Id.* Plaintiff stated that after 20 minutes she "might can do something else for a few minutes, maybe another 10 minutes, but then [she] will have [to] stop" and wait a few minutes. *Id.* Plaintiff testified that she could not carry a gallon of

4

milk, and when bringing in groceries she would only carry the bread and eggs. Tr. 50. Plaintiff

testified that she did her own grocery shopping once a month but someone goes with her. *Id.*

Plaintiff stated that the only place she goes on a regular basis is the grocery store and doctor

visits. Tr. 51. Plaintiff stated that because of her depression she prefers to be alone and she was

not like that before. *Id.* Plaintiff stated that the majority of the time she is in her room watching

TV. *Id.*

    2.  Testimony of VE

    VE Bruce also testified at the administrative hearing. Tr. 52. The ALJ noted that

Plaintiff's work at Wal-Mart was not substantial gainful activity and the VE described Plaintiff's

past work in customer service as semi-skilled with an SVP of 4. *Id.* The ALJ stated that he was

going to consider a person with a range of unskilled work, closely approaching advanced age,

with the ability to read and write. *Id.* The ALJ stated:

> This person, for the first hypothetical, would be at the medium exertion, as far as
> lifting goes. However she can only occasionally push or pull with her right lower
> extremity. She shouldn't climb ladders, ropes, or scaffolds. Only occasional
> ramps and stairs. Let's rule out any kneeling or crawling. Rule out any exposure
> to vibration as well as heights and dangerous machinery. Emotionally, she is
> reduced to a range of routine simple work where she doesn't have to work with
> large crowds and where she doesn't have to wait on the public as customers.

Tr. 52-53. The ALJ asked if that person could perform occupations existing in the regional or

national economies and the VE responded affirmatively. Tr. 53. The VE provided the following

occupations as examples: "A kitchen worker. The DOT is 318.687-010, SVP of 2, exertional

level is medium. In the national economy, 30,610. Another would be janitorial. DOT is 381.67-

018, SVP is 2, exertional level is medium. In the national economy, 908,700." *Id.* The VE

testified that the maximum number of days the person could be absent and still retain

employment would be two days per month. Tr. 53-54. The VE stated that her testimony would

change if a cane was needed to ambulate because it "would be difficult for her to use a cane

working in a kitchen or in janitorial work." Tr. 54. The VE stated that with a cane the exertional

level would be reduced to sedentary. *Id.* Plaintiff's counsel had no questions for the VE. *Id.*

II.    Discussion

    A. The ALJ's Findings

In his April 18, 2014 decision, the ALJ made the following findings of fact and

conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on June 30, 2013.

2.    The claimant has not engaged in substantial gainful activity since February 21, 2011, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: mild degenerative changes of the lumbar spine, minimal degenerative changes of the right knee, and affective disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following limitations: The claimant can occasionally push and/or pull with the right leg. She can occasionally climb ramps/stairs but cannot climb ladders, ropes, or scaffolds. She cannot kneel or crawl. She should avoid all exposure to vibration, heights, and dangerous machinery. She is limited to simple, routine work. She should avoid large crowds in the workplace and waiting on the public as customers.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on November 26, 1958, and was 52 years old, which is defined as closely approaching advanced age, on the amended alleged disability date. The claimant is presently 55 years old and subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from February 21, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 14-22.

B.  Legal Framework

1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.   If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III.    Analysis

Plaintiff asserts that (1) the ALJ failed to evaluate certain medical opinion evidence; (2) the ALJ failed to properly explain his findings regarding Plaintiff's residual functional capacity ("RFC"); and (3) the ALJ failed to properly assess her credibility. Pl.'s Br. 15, 18, 24; ECF No. 15.

A.   ALJ's Consideration of Medical Opinion

Plaintiff asserts the ALJ failed to evaluate the medical opinion of State agency physician, Dr. Lindsey Crumlin. Pl.'s Br. 16. The Commissioner contends that "while the ALJ did not identify Dr. Crumlin by name, he properly discussed the standard under which he evaluated Dr. Crumlin's opinion and explained why he discounted the weight of the opinion[.]" Def.'s Br. 9, ECF No. 17.

1.   Evaluation of State Agency Physician Opinions

Regardless of the source, the ALJ will evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96–6p, 1996 WL 374180, at *2. Pursuant to SSR 96–6p, findings of fact made by state-agency medical and psychological consultants regarding the nature and severity of a claimant's impairments must be treated as expert opinion evidence of non-examining sources by the ALJ. SSR 96–6p, 1996 WL 374180, at *1. "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). However, the ALJ may not ignore these opinions and must evaluate them in accordance with 20 C.F.R. §§ 404.1527 and 416.927. SSR 96–6p, 1996 WL 374180, at *1. The regulations identify the following factors to be considered in evaluating medical opinion

10

evidence: (1) whether the physician has examined the claimant, (2) the treatment relationship between the physician and the claimant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) other factors that may support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

SSR 96–6p, 1996 WL 374180, at *2.

### 2.   Opinion of Dr. Lindsey Crumlin

On April 25, 2012, Lindsey Crumlin, MD, completed a Physical Residual Functional Capacity Assessment of Plaintiff as part of Plaintiff's disability determination at the initial level denying Plaintiff's claim. Tr. 66-68. Dr. Crumlin opined that Plaintiff had exertional limitations and could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about six hours in an eight-hour day, sit for about six hours in an eight-hour day, and had no push/pull limitations other than shown for lift and/or carry. Tr. 66. Dr. Crumlin relied on the October 2008 through April 2012 medical records of the Kershaw Community Medical Clinic and the July 2010 through January 2012 records of the Kershaw County Medical Center. Tr. 66-67. Dr. Crumlin opined that Plaintiff could occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. Tr. 67. Dr. Crumlin found that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. However, the claimant's statements concerning the intensity,

persistence, and limiting effects of these symptoms on function are not substantiated by the total evidence of record and hence only partially credible." Tr. 68. Dr. Crumlin found that the medical evidence of record supported the assessment that Plaintiff could "sustain standing/ambulating for a total of 6 hours of a workday with appropriate breaks and hence can sustain activity as prescribed in this RFC." *Id.*

### 3. ALJ's Consideration of the Medical Record and Dr. Crumlin's Opinion

At Step Two of the sequential evaluation process, the ALJ identified and discussed Plaintiff's impairments. Relevant to Dr. Crumlin's assessment, the ALJ found Plaintiff had the severe impairments of mild degenerative changes of the lumbar spine and of the right knee, and affective disorder. Tr. 14. The ALJ noted that Plaintiff complained of pain in the left shoulder, left wrist, hips, and right foot and her testimony at the administrative hearing regarding these ailments. Tr. 15. The ALJ also cited to x-rays of Plaintiff's wrists in 2010 and 2012 that did not indicate any acute abnormalities or evidence of rheumatoid arthritis. *Id.* The ALJ concluded that "the medical evidence fails to establish the claimant has impairments involving her left shoulder, left wrist, hips, or right foot that imposes more than minimal functional limitations upon the claimant." *Id.*

At Step Three the ALJ determined Plaintiff's RFC. The ALJ stated that in making his RFC determination he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." Tr. 17. The ALJ then discussed the medical evidence including x-rays that showed Plaintiff had mild degenerative disc changes and treatment records indicating mild muscle tenderness, 5/5 muscle strength, normal reflexes, moderate back pain, equal motor strength bilaterally in the upper and lower extremities, and normal coordination in the upper and lower extremities. Tr. 18 (citing to May 7, 2012 x-rays; treatment records from Kershaw Medical Clinic; and treatment records from Sandhills Medical

Foundation). The ALJ noted that he evaluated the "intensity, persistence, and functionally limiting effects" of Plaintiff's symptoms and considered "both medical and non-medical evidence." Tr. 19. The ALJ concluded:

> Upon review of the total evidence of record, and in consideration of the combined effect of the claimant's impairments, including all severe impairments, nonsevere impairments, and subjective complaints, I find the claimant's mild degenerative changes of the lumbar spine and minimal degenerative changes of the right knee limit the claimant to medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can occasionally push and/or pull with the right leg. She can occasionally climb ramps/stairs but cannot climb ladders, ropes, or scaffolds. She cannot kneel or crawl. She should avoid all exposure to vibration, heights, and dangerous machinery.

Tr. 20. The ALJ also referenced his findings regarding Plaintiff's mental impairments, and then concluded as follows:

> My conclusion that the claimant is not "disabled" is further supported by the opinions of the State agency medical consultants. As those of nonexamining physicians, their opinions are not entitled to controlling weight, but must be considered and weighed as those of highly qualified experts in the evaluation of the medical issues in disability claims under the Social Security Act (Social Security Ruling 96-6p). I give some weight to these opinions; however, I find that the evidence in its entirety, including hearing testimony, establishes the claimant has the residual functional capacity for medium work with the limitations as shown in Findings No. 5.

*Id.*

### 4. Discussion

Plaintiff argues that Dr. Crumlin's opinion indicates that she is "limited to a range of light work activity" and "that finding would support a finding of disability from [Plaintiff's] 55th birthday." Pl.'s Br. 16-17. The Commissioner points out that the "ALJ and Dr. Crumlin mostly agreed" and "the ALJ issued an RFC finding that was *more restrictive* than Dr. Crumlin's opinion in several respects." Def.'s Br. 10 (emphasis in original). The Commissioner notes that the "only material distinction between the Dr. Crumlin's opinion and the ALJ's RFC finding involves the amount of weight that Plaintiff could lift and carry." *Id.*

The lift and carry distinction is an important one as it determines whether an individual is capable of medium or light work. According to the regulations light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(b) and (c), 416.967(b) and (c). Here, Dr. Crumlin's RFC assessment limited Plaintiff occasional lifting and carrying of 20 pounds and frequent lifting and carrying of 10 pounds, which is the criteria for light work. Tr. 66.

While Plaintiff may disagree with the ALJ's findings, the ALJ's decision reflects that he properly considered all of the evidence in making his RFC determination—including Dr. Crumlin's assessment. *See Hays*, 907 F.2d at 1456 (holding that it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence). As noted above, the regulations provide that an ALJ is not bound by any finding made by a State agency medical consultant. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Here, the ALJ considered the opinion and gave it "some weight" but determined the evidence of record supported his own RFC assessment. Tr. 20. The undersigned recommends a finding that the ALJ sufficiently examined the medical evidence and adequately explained the weight given to the opinions of the State agency medical consultants. *See Koonce v. Apfel*, 166 F.3d 1209 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted).

B.  Plaintiff's RFC

Plaintiff asserts the ALJ failed to properly explain his RFC findings as it related to Plaintiff's concentration, persistence, and pace; Plaintiff's gait and balance; and the impact of Plaintiff's obesity. Pl.'s Br. 19-22. The Commissioner contends that substantial evidence supports the ALJ's RFC finding that Plaintiff could perform a limited range of unskilled medium-level work. Def.'s Br. 11.

Residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Plaintiff is responsible for providing the evidence to be used in making a finding about her RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). This includes evidence of any factors showing how her impairment affects her ability to work. 20 C.F.R. §§ 404.1512(c), 416.912(c). "[A] condition that does not result in any functional impairment is not relevant to the RFC analysis." *Wimberly v. Barnhart*, 128 Fed. App'x 861, 863 (3d Cir. 2005). SSR 96–8p provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

1996 WL 374184, at *7.

It is widely held that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision. *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("[T]he

ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it."); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted."); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).

1. Concentration, Persistence, and Pace

Plaintiff submits that the ALJ's restrictions in the RFC limiting her to simple, routine work and avoiding large crowds in the workplace and waiting on the public as customers do not account for moderate difficulties in concentration, persistence, and pace. Pl.'s Br. 19. Citing to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), Plaintiff asserts that "the ALJ in this case made no finding that the concentration, persistence, or pace limitation did not affect [Plaintiff's] ability [to] work, in which case [Plaintiff] asserts it was inappropriate to exclude it from the hypothetical to the VE or within the RFC explanation (Tr. 20)." *Id.* at 20. The Commissioner contends that "[i]n these circumstances, where the ALJ explained why a limitation to simple, routine work accounted for the no-more-than-moderate concentration, persistence, or pace limitations, *Mascio* does not warrant remand. Def.'s Br. 13.

In *Mascio* the Fourth Circuit specifically held that it "agree[d] with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (joining the Third, Seventh, and Eighth Circuits). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating

that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

Here, at Step Three the ALJ found that the "evidence demonstrates [Plaintiff's] affective disorder resulted in no more than mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace."[3] Tr. 16. In determining Plaintiff's RFC the ALJ cited to Plaintiff's mental health treatment records wherein Plaintiff "denied having sustained depression or significant anxiety" although complaining of "depressed mood, low energy, variable appetite, and self-isolation." Tr. 19. The ALJ cited to mental status examinations that "consistently reflect the claimant was alert, oriented, and cooperative with appropriate thought content and intact attention, concentration, and memory" and her global assessment of functioning ("GAF") score of 60-62. *Id.* The ALJ noted that "[a]lthough the claimant may have experience[d] some depressive symptoms, the medical evidence clearly demonstrates the claimant was alert and oriented" and that she "had intact attention, concentration and memory." *Id.*  The ALJ determined that the medical evidence established the existence of medically determinable impairments, including affective disorder, which were capable of producing functional limitations. *Id.* The ALJ, therefore, evaluated "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which they affect the claimant's ability to work." *Id.* The ALJ made the following determination:

---

[3] Defendant argues that the modifying phrase "no more than" applies to each of the listed limitations, not just activities of daily living. *See* Def.'s Br. 12-13. The undersigned disagrees, but finds that distinction does not impact the analysis.

> As to her affective disorder, as discussed in Finding #3, the evidence substantiates that such disorder results in no more than mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace on complex tasks. She should be able to attend to and perform simple tasks throughout the workday for at least two hours at a time with normal work breaks and without special supervision. I find no evidence of episodes of related decompensation of extended duration. Accordingly, the claimant's affective disorder limits the claimant to simple, routine work. She should avoid large crowds in the workplace and waiting on the public as customers.

Tr. 20.

Although the ALJ's hypothetical to the VE did not incorporate limitations in concentration, persistence, or pace as contemplated by *Mascio*, remand is not required because the ALJ provided an explanation in his decision as to why Plaintiff's limitations in concentration, persistence, and pace did not affect her ability to work. *See* Tr. 19-20. In *Mascio*, the Fourth Circuit remanded because the ALJ gave no explanation. *Mascio*, 780 F.3d at 638. Here the ALJ adequately accounted for Plaintiff's moderate limitations in concentration, persistence, or pace by limiting Plaintiff to simple routine work and adding that she should be able to perform simple tasks for at least two hours at a time with normal work breaks and without special supervision. Tr. 20. "Such a finding also implicitly addresses Plaintiff's ability to stay on task by limiting her to maintaining attention and concentration for no more than two hours at a time. Therefore, unlike in *Mascio*, in which the ALJ gave no explanation regarding whether the claimant's mental limitations affected his ability to work, . . . the ALJ in this case sufficiently addressed and accounted for Plaintiff's deficits in concentration, persistence, or pace and how those limitations affected Plaintiff's ability to perform work-related activities, including her ability to stay on task." *Burns v. Colvin*, No. 3:14-CV-270-RJC, 2016 WL 270311, at *6 (W.D.N.C. Jan. 20, 2016).

2.   Gait and Balance

Plaintiff asserts "the ALJ fails to explain why the RFC did not account for her frequent falls just because she was unable to describe mechanical symptoms" and although Plaintiff used a cane that was not prescribed, "the ALJ fails to explain whether or not an ambulatory assistive device was medically necessary." Pl.'s Br. 20-21. The Commissioner argues that the "ALJ properly did not include a cane-specific limitation in the RFC finding because Plaintiff has produced no evidence that the cane was medically required." Def.'s Br. 13.

Both parties cite to SSR 96-p's discussion regarding medically required hand-held assistive devices.[4] That ruling provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185, at *7.

Plaintiff has provided no evidence or medical documentation regarding her need for a cane or describing the purposes for which a cane would be needed. In his decision the ALJ addressed Plaintiff's testimony regarding use of a non-prescribed cane. Tr. 17. He also described treatment records noting that Plaintiff reported that her "knee gave out at random times" but she did not describe mechanical symptoms, and she occasionally wore a knee brace that belonged to someone else. Tr. 18 (citing Ex. 22F at Tr. 365, treatment note from Orthopaedic Center). The ALJ also referenced other treatment records indicating Plaintiff walked with a cane and clinical findings indicating her knees were stable, she had intact sensation in her feet, her gait was stable,

---

[4] SSR 96-9p explains the "Social Security Administration's policies regarding the impact of [an RFC] assessment for less than a full range of sedentary work on an individual's ability to do other work." 1996 WL 374185, at *1. In this case, the ALJ assessed Plaintiff with the ability to perform medium work with certain limitations.

and Plaintiff denied paresthesia in her legs, trouble walking, or motor/sensory disturbances. *Id.* (citing Ex. 22F at Tr. 357, Ex. 35F at Tr. 513). Plaintiff has cited to no medical documentation requiring her to use a cane. "Absent evidence documenting the medical necessity of a cane, the ALJ was not required to consider the impact of Plaintiff's use of a hand-held assistive device." *Demery v. Colvin*, No. 2:13-CV-28-D, 2014 WL 2159347, at *3 (E.D.N.C. Apr. 28, 2014), *report and recommendation adopted,* No. 2:13-CV-28-D, 2014 WL 2159349 (E.D.N.C. May 23, 2014). "Plaintiff fails to cite any law requiring an ALJ to consider the impact of a device that a Plaintiff is not medically required to use. Because there is no evidence showing that the cane is medically required or law requiring an ALJ to consider the impact of a non-required device, the ALJ did not err" in his RFC finding. *Timmons v. Colvin*, No. 3:12CV609, 2013 WL 4775131, at *8–9 (W.D.N.C. Sept. 5, 2013).

### 3.  Obesity

Plaintiff asserts the ALJ erred because he failed to consider the impact of her obesity on her RFC. Pl.'s Br. 22. Plaintiff states that she is 5'7" and her weight ranged from 187 to 212 pounds. *Id.* Plaintiff asserts she was diagnosed with obesity on April 15, 2011.[5] *Id.* (citing Tr. 385). Plaintiff contends that "her weight levels, when coupled with her musculoskeletal disorders, would be a medically determinable impairment which must be considered under the sequential evaluation of disability." *Id.* The Commissioner contends that because Plaintiff has provided no evidence "showing that her obesity causes any work-related functional limitations, let alone any limitations that are in excess of those accounted for in the ALJ's RFC assessment" her argument should be rejected. Def.'s Br. 15.

---

[5] On that date Plaintiff was seen by a nurse practitioner with Community Medical Clinic of Kershaw County who assessed Plaintiff with fatigue, hypertension, medication non-compliance, obesity, and chronic lower back pain. Tr. 385.

Nowhere in the administrative process has Plaintiff alleged that her obesity placed any limitations on her functional capacity. At no time during the administrative hearing did Plaintiff indicate that her obesity was a problem that impacted her ability to function. The burden of proof and production rests on Plaintiff to show limitations. *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir. 1995) (noting burden of proof and production is on claimant at steps one through four of the sequential evaluation); *Russell v. Chater,* No. 94–2371, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (noting a claimant must explain the basis of his theory as to how obesity limits his functional ability; speculation is not permitted). Given the lack of evidence in the record to support a finding that Plaintiff's obesity contributed to or equaled any listed impairment, the undersigned recommends a finding that the ALJ did not err in failing to consider Plaintiff's obesity in his RFC assessment. *See Howell v. Colvin*, No. 5:12-CV-2554 DCN, 2014 WL 798371, at *8 (D.S.C. Feb. 27, 2014). Furthermore, even if the ALJ erred by failing to expressly consider Plaintiff's obesity, the undersigned finds such error is harmless because there is no record evidence of functional limitations based on Plaintiff's obesity. *Timms v. Colvin*, No. 5:12-CV-3388-RBH, 2014 WL 807988, at *7–8 (D.S.C. Feb. 28, 2014) (citing *Elder v. Astrue,* No. 09–2365, 2010 WL 3980105 at *9 (D.S.C. Oct. 8, 2010) ("As neither her medical records, nor her own statements, provide [evidence of the effect on her functioning or ability to work resulting from] her obesity, any failure of the ALJ to explicitly address [the claimant]'s obesity is only harmless error.")).

C.  Plaintiff's Credibility

In her final allegation of error Plaintiff asserts that the "credibility analysis in this case lacks a proper explanation by the ALJ, which would include consideration of the pain rule." Pl.'s Br. 27. Plaintiff also contends the "ALJ does not make a clear finding as to whether the medically determinable impairments could cause her alleged symptoms, and the ALJ does not

proceed to an evaluation of 'all of the evidence' and factors listed in SSR 96-7p in evaluating the issue of credibility beyond the objective medical evidence." *Id.* at 29. The Commissioner contends that substantial evidence supports the ALJ's credibility assessment and the ALJ presented "well-supported" reasons for his findings. Def.'s Br. 16-17.

SSR 96-7p[6] requires that, prior to considering Plaintiff's subjective complaints the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess Plaintiff's credibility regarding the severity of his subjective complaints, including pain. *See* SSR 96-7p, 1996 WL 374186, at *2; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b); *Craig v. Chater,* 76 F.3d at 591-96. The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of his testimony and the record as a whole. If the ALJ rejects a claimant's testimony about his pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.,* 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker,* 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent

---

[6] In 2016 the Social Security Administration published SSR 16-3p, 2016 WL 1119029 (2016), which supersedes SSR 96-7p, eliminates use of the term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. Because the ALJ decided this case prior to March 16, 2016, the effective date of SSR 16-3p, the court analyzes the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility. Although SSR 16-3p eliminates the assessment of credibility, it requires assessment of most of the same factors to be considered under SSR 96-7p.

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 1996 WL 374186, at *4.

The Ruling further requires "[a]ssessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record." 1996 WL 374186, at *5. This evidence includes statements "about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work." *Id.*

The ALJ considered Plaintiff's credibility by using the two-step process outlined above. The ALJ reviewed the medical evidence and discussed Plaintiff's impairments and symptoms, history of medical treatment and her complaints of pain and her testimony regarding her activities. Tr. 17-19. The ALJ found that "after careful consideration of the evidence" that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent alleged." Tr. 19. The ALJ noted radiological findings and clinical findings related to Plaintiff's back and right knee, and the medical evidence related to Plaintiff's affective disorder. *Id.* The ALJ concluded:

> The medical evidence establishes the existence of the medically determinable impairments of mild degenerative changes of the lumbar spine, minimal degenerative changes of the right knee, and affective disorder, which are capable of producing some pain and functional limitations upon the claimant. Therefore, the intensity, persistence, and functionally limiting effects of the symptoms have been evaluated to determine the extent to which they affect the claimant's ability to work. Consideration has been given to both medical and non-medical evidence, including the use and effects of medications; precipitating and aggravating factors; duration and frequency of the symptoms; resultant functional restrictions; daily activities; treatment and other alternative measures, besides medications, for the relief of pain; the consistency between the level and frequency of treatment

and the level of complaints; the extent to which prescribed treatment has been followed; the consistency of the claimant's allegations with prior statements made about the symptoms elsewhere in the record to other medical sources, to family, friends, agency personnel or other lay persons; and the consistency of the allegations with reports and observations by others concerning the claimant's activities, behavior and efforts to work (Social Security Ruling 96-7p).

After careful review of the entire record, I find that the evidence as to the claimant's condition, activities, and capabilities, including her testimony at the hearing as to pain and other subjective symptoms, is not consistent with the degree of disabling impairments she alleged. Although the claimant has impairments that impose some limitations on her ability to work, the evidence fails to substantiate that her impairments, either singly or in combination, are of the severity as to preclude the performance of all work-related activities.

Tr. 19-20.

When considering whether an ALJ's credibility determinations are supported by substantial evidence, a district court does not replace its own credibility assessments for those of the ALJ, but, rather, the court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its own judgment for that of the Commissioner. *Hays,* 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984). The undersigned has considered Plaintiff's challenges and has reviewed the record. Based on this review and applicable law, the undersigned finds that the ALJ's decision reflects that he considered the relevant factors in weighing Plaintiff's credibility.

IV.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the

foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record evidence and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under the Act, it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

January 25, 2017
Florence, South Carolina

Kaymani D. West
United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**